## Aitken's Estate.    Macbeth's Appeal.

· *Church law—Corporation—Property—Legacy.*

The charter of "The First New Jerusalem Society of the city of Pittsburgh and its vicinity," provided that all adult persons of good, moral and religious character, who might be attached to the doctrines of the new church, could become members of the corporation. The corporation was authorized to hold real and personal property, and the control of its business was vested in an acting committee or council. The corporation connected itself with the general Swedenborgian church of Pennsylvania. By the organization of this church in Pennsylvania, the bishop and other pastors and ministers constitute the General Ecclesiastical Council, having charge of spiritual affairs, and the council of the laity, having "charge and control of the civil and business affairs and of the property of the body of the church, and shall be the representatives of the same in all matters relating to the civil law and government of the country." There was no provision that the property of the separate societies should become the property of the general church. The Pittsburgh society by a vote of thirty-seven to twenty-two severed its connection with the general church. The bishop of Pennsylvania thereupon appointed trustees to take possession of the society's property, but this was resisted by the old society. The minority of the old society and the trustees then organized another church under the name of "Church of the Advent, Pittsburgh." *Held*, that a bequest to "the New Church of Pittsburgh" should be awarded to the corporation known as "The First New Jerusalem Society of the city of Pittsburgh and its vicinity."

Argued Nov. 9, 1893.  Appeal, No. 296, Oct. T., 1893, by George A. Macbeth et al., trustees, claiming legacy, from decree of O. C. Allegheny Co., June T., 1893, No. 74, dismissing exceptions to adjudication of account of executors of Anna Aitken, deceased.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to adjudication of executors' account.

The facts appear by the opinion of the court below as follows, by HAWKINS, P. J.:

"The controversy here grows out of adverse claims to a legacy bequeathed by Mrs. Aitken to 'the New Church of Pittsburg the sum of one thousand dollars ($1,000.00) to be used as the Council of that Society deem best.' It is conceded that the beneficiary intended was 'The First New Jerusalem Society of

Pittsburgh and its Vicinity,' incorporated under the laws of this state ; but there are rival claimants here to represent that society, and the question submitted is, which of these claimants has the right.   The material facts are these :

"The charter of 'The First New Jerusalem Society of the City of Pittsburgh and its Vicinity,' granted July 6, 1863, provided amongst other things that 'all adult persons of good moral and religious character who may be attached to and profess faith in the doctrines of the New Church may, on application to the president or presiding officer of the meeting at which such application shall be made, and on complying with such other form as may in any by-law passed for that purpose by said corporation be required, become members of the same. There shall be elected annually a president, secretary, treasurer, librarian and trustees, all of whom together shall form an acting committee, whose duty it shall be to take cognizance generally of the affairs of the society, but in all important matters the acting committee may be controlled by a vote of the society. . . . To receive or take by gift or devise, purchase or otherwise, property, real, personal and mixed ; . . . . to make such by-laws for the management of its affairs and the good government of its officers and members, as may be deemed expedient, . . . . and generally to exercise any and all powers generally appertaining by law to a corporation or body politic.'

" The by-laws provide amongst other things that

" 'Section 2. The ecclesiastical affairs, or those pertaining to the divine law and worship, shall be administered by the pastor or minister, and he shall exercise his functions according to the laws enacted by the general body or bodies of the church with which this society shall be connected.   The pastor shall be ex-officio a member of the society and as such eligible to its presidency.

" 'Section 3. The control of the business affairs of this society shall be vested in an acting committee or council, consisting of the president, secretary, treasurer, librarian and three trustees, who shall be elected annually by the members, and who shall hold their offices until their successors have been duly elected. . . .

" ' Section 4. The annual meeting of the society shall be held on the second Monday of January of each year for the election

of officers, hearing reports and the transaction of any other business that may be brought before the society.'

"This society seems to have connected itself with the General (Swedenborgian) Church of Pennsylvania, for the express purpose of co-operation in missionary work and not to give control over its own individual affairs in any manner whatever, and with the General Convention of the United States. By the organization of the church in Pennsylvania, the bishop and other pastors and ministers constitute the General Ecclesiastical Council having charge of spiritual affairs, and the Council of the Laity having 'charge and control of the civil and business affairs and of the property of the body of the church, and shall be the representatives of the same in all matters relating to the civil law and government of the country.' There is no definition of what shall constitute the property of the body of the church, nor any provision that property of societies which may become connected with, shall become the property of such church. There is no prohibition of secession by any society from the General Church. On the contrary, the right has never been denied until the present dispute arose; but has been repeatedly exercised and recognized. Thus a list of societies in Pennsylvania is furnished which have severed their connection with the General Church, and taken their property with them, without, so far as appears, even a protest or question. The General Church itself exercised the right of secession from the 'General Convention' of the United States in 1890, and was allowed to depart in peace.

"After the secession of the General Church, an organization on a new basis having been begun, which was subsequently carried out as is alleged illegally, the Pittsburgh society, in February, 1892, decided by a vote of 37 to 22 to sever its connection with the General Church. The bishop of Pennsylvania thereupon, although he had previously conceded the right of secession, appointed George A. Macbeth and two other trustees, and undertook with them to take possession of the society's property, but was prevented by the trustees who had been regularly elected. The minority then meeting under the authority of the bishop and the trustees appointed by him bought other property and built a church in Pittsburgh, where they now worship under the name of 'Church of the Advent, Pittsburgh,' without

any charter right.   They took no action looking to the election of trustees or other officers.   The majority have kept up a regular organization by election in accordance with the charter and by-laws.

" In the meantime George A. Macbeth, for himself and others, filed in the court of common pleas, against the parties in possession of the church property, with a view to raise the question as to who are the proper and legal representatives of said Pittsburgh society, a bill in equity; but the present audit, involving the same question, having come on first, the parties, by writing filed, have submitted it for final decision by the court.

" This court finds that [the Rev. John Whitehead, Albert H. Childs et al. are the proper and legal representatives of the First New Jerusalem Society of Pittsburgh and its vicinity, and as such entitled to the charge and control of its property."]

Exceptions to adjudication were dismissed by the court.

*Errors assigned* were dismissal of exceptions to adjudication, and decree, quoting them.

*Thomas Patterson, Knox & Reed* and *Edwin Z. Smith* with him, for appellant, cited: McGinnis v. Watson, 41 Pa. 9; Ramsey's Ap., 88 Pa. 60; Appeal of First M. E. Church of Scranton, 16 W. N. 245; Stack v. O'Hara, 98 Pa. 232.

*J. S. Ferguson* and *J. H. White, E. G. Ferguson* with them, for appellee, cited: Act of April 26, 1855, § 5, P. L. 329; McGinnis v. Watson, 41 Pa. 9; Schnorr's Ap., 67 Pa. 138; Roshi's Ap., 69 Pa. 462; Ramsey's Ap., 88 Pa. 60.

PER CURIAM, November 14, 1893:

All the questions involved in this contention were correctly disposed of by the learned judge of the orphans' court, and the decree is affirmed on his opinion.

Decree affirmed and appeal dismissed with costs to be paid by the appellant.